## MOSES WELLS v. TERRITORY.

No. 1995, Okla. T.   Opinion Filed December 9, 1908.

(98 Pac. 483.)

1.  INDICTMENT AND INFORMATION—Duplicity. Under the provisions of Code Cr. Proc. sec. 224 (Wilson's Rev. & Ann. St. 1903, sec. 5360), providing that: "An indictment must charge but one offense; but where the same acts may constitute different offenses, or the proof may be uncertain as to which of two or more offenses accused may be guilty of, the different offenses may be set forth in separate counts in the same indictment, and the accused may be convicted of either offense"—an indictment is bad for duplicity that charges two distinct offenses in one count—that is, the uttering of a check knowing it to be forged, and the forging of the indorsement thereon and then uttering the same—and a demurrer thereto should be sustained.

2.  CRIMINAL LAW—Immaterial Variance. Section 482, Code Cr. Proc. (Wilson's Rev. & Ann. St. 1903, sec. 5618), provides that: "On an appeal the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties." Where the indictment charges that the check was delivered to Katz Bros., a firm composed of Jacob Katz and Isaac Katz, partners, doing business under the firm name of Katz Bros., if the check was, in fact, passed to Katz Bros., a corporation, doing business under the corporate name of Katz Bros., of which corporation Jacob Katz and Isaac Katz were stockholders and officers, such variance is not material.

3.  FORGERY—Intent—"Uttering Forged Check." To constitute the offense of uttering a forged check, there must be an intent to cheat and defraud, and a knowledge of the falsity of the instrument.

4.  SAME—Instructions—Knowledge of Accused. Under a statute defining the offense of uttering forged instruments knowing them

to be forged, it is error to instruct the jury that they should find that defendant had knowledge of the forgery. "If he had notice of any suspicious facts or circumstances which were sufficient to put a reasonably prudent and cautious person upon inquiry, which, if followed up, would have led to knowledge of its forgery, then he would be chargeable with notice of the character of the check."

5.      SAME—Guilty Knowledge. Guilty knowledge that an instrument is forged may be found if the jury is satisfied from the facts and circumstances shown by the testimony that the defendant had reason to believe it was forged; but the inference is for the jury, and does not follow of necessity.
(Syllabus by the Court.)

*Error from District Court, Payne County; J. H. Burford, Judge.*

Moses Wells was convicted of forgery, and brings error. Reversed and remanded.

Plaintiff in error, Moses Wells, hereinafter referred to as "the defendant," was prosecuted by indictment for the crime of forgery, in the district court of Payne county, Okla. T., at the April term, 1906, which indictment, omitting the formal parts, reads as follows:

"Territory of Oklahoma v. Moses Wells. Indictment. Of the April term of the district court of the first judicial district of the territory of Oklahoma, within and for Payne county, in said territory, in the year of our Lord, one thousand nine hundred and six, the grand jurors, having been first duly chosen, selected, impaneled, sworn and charged to inquire of the offenses against the laws of the territory of Oklahoma, committed within said county, in said territory of Oklahoma upon their oath aforesaid, in the name and by the authority of the territory of Oklahoma, do find and present: That at and within said Payne county, in said territory, on the twenty-fifth day of July, in the year of our Lord one thousand nine hundred and five, Moses Wells, late of the county aforesaid, on the twenty-fifth day of July, in the year of our Lord one thousand nine hundred and five in the county of Payne nad territory of Oklahoma aforesaid, then and there unlawfully and feloniously sell, exchange and deliver to Katz Brothers, a firm composed of Jacob Katz and Isaac Katz, partners, doing business under the firm name of Katz Brothers, for the consideration of about thirteen dollars of good and lawful money of the United States and of the value of about thirteen dollars, the exact value and description of which is to the

grand jurors unknown, and various articles of clothing, goods, wares and merchandise of about the value of eight dollars, the exact description and value of which is to the grand jury unknown; a forged and counterfeited check of the tenor, purport and effect following: 'Billings, Oklahoma, July 18, 1905. No. 8. Citizens' Bank of Billings: Pay to Paul Brown, or bearer, $21.00. Twenty-one Dollars. H. Biffer. (Shadinger Ptg. Co. Abilene, Kan.)'—which instrument had endorsed on the back thereof, 'Paul Brown,' with the felonious intent to have the same uttered and passed, and he, the said Moses Wells, before delivering said forged and counterfeited check to Katz Brothers, wrote and endorsed on the back thereof the name 'Paul Brown,' and he, the said Moses Wells, at the time he so sold, exchanged and delivered the said forged and counterfeited check to said Katz Brothers, knew the same to be forged and counterfeited, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the territory of Oklahoma."

To this indictment the defendant entered a general demurrer, which was, by the court, overruled, to which ruling of the court the defendant excepted. The case coming on for trial by a jury, the territory offered its evidence and rests. Whereupon the defendant moved the court to direct a verdict of not guilty, for the reasons: First, that the evidence offered by the territory is not sufficient to sustain a verdict of guilty; second, that there is a fatal variance between the allegations of the indictment and the proof offered in the case—which motion was, by the court, overruled, and the defendant excepted. Evidence was then introduced by the defendant and the territory and the defendant renewed his motion to direct a verdict, which motion was over ruled, and exception taken. The court instructed the jury, arguments were made by counsel, and the jury retired to deliberate, and thereafter returned into court their verdict, which was a general verdict of guilty. Motion for new trial was regularly made, and on the 23d day of April, 1906, the court overruled said motion; to this the defendant duly excepted. The court then sentenced defendant to confinement in the territorial penitentiary for a term of two years, to all of which the defendant duly excepted, and gives notice of an appeal, which appeal was duly per-

fected to the Supreme Court of the territory of Oklahoma. Upon the admission of Oklahoma as a state, the cause was transferred to the Supreme Court of Oklahoma. Under the provisions of the act creating the Criminal Court of Appeals, the cause was transferred to, and is now before, this court for review.

*Lowry & Lowry,* for plaintiff in error.—

On question of fatal variance between allegation of partnership and proof of corporation: *Cutler v. Territory,* 8 Okla. 101; *State v. Murphy,* (R. I.) 16 L. R. A. 550; *State v. Harrison,* 69 N. C. 143; *United States v. Keen,* Fed. Cas. No. 15, 510 (1 McLean, 429); *Sykes v. People,* 132 Ill. 32.

On necessity of proof of guilty knowledge: Wilson's Rev. & Ann. St. 1903, c. 25, §523; A. & E. Enc. Law (1st Ed.) Vol. I, 491; 1 Whar. Crim. Law, § 742; *Sands v. Com.,* 20 Gratt. (Va.) 800; *Elsey v. State,* 47 Ark. 572; *Parker v. People,* 97 Ill. Lean, 429, *Sykes v. People,* 132 Ill. 32.

*W. O. Cromwell, Don C. Smith, J. H. Kline,* and *W. C. Reeves,* Asst. Atty. Gen., for defendant in error.—

On the sufficiency of the indictment: *Heatley v. Territory,* 15 Okla. 72; *Baysinger v. Territory,* 15 Okla. 386.

On the question of variance: *Connella v. Territory,* 16 Okla. 365; *State v. Hastings,* 53 N. H. 452; *United States v. Mason,* 26 Fed. Cas. 1192.

DOYLE, JUDGE. The first assignment of error relied on by the defendant to reverse this case is the overruling of the defendant's demurrer to the indictment. The third ground of said demurrer is as follows: "(3) That said indictment upon its face attempts to charge more than one offense against the laws of the territory of Oklahoma." Section 224, Code Cr. Proc. (Wilson's Rev. & Ann. St. 1903, § 5360), prescribes that an indictment must charge but one offense; but where the same acts may constitute different offenses, or the proof may be uncertain as to which of two or more offenses accused may be guilty of, the different offenses may be set forth in separate counts in the same indictment, and the accused may be convicted of either offense.

We believe the indictment is bad for duplicity, in charging two distinct offenses in one count; that is, the uttering of the check, knowing it to be forged, and the forging of the endorsement thereon, and then uttering the same. The offenses are distinct, arising upon different acts, and each constitutes the offense of forgery in the second degree. Under the foregoing provisions of the Code, it was necessary to set forth the separate counts, the uttering and the selling or exchanging of·said check, knowing it to be forged, and the forging of the endorsement thereon, and the selling, exchanging, and delivery with the forged endorsement.

It is a general rule that when a statute makes it an offense to do some one or another act, naming them disjunctively, either of which would constitute one and the same offense, the acts may be charged conjunctively in .one count as constituting a single offense, and it has been held that: "Where the making and uttering of a ficitious instrument is one continuous transaction, they may be properly charged in one count as a single offense." 19 Cyc. p. 1410; *People v. Dole,* 122 Cal. 486, 55 Pac. 581, 68 Am. St. Rep. 50; *Selby v. State,* 161 Ind. 667, 69 N. E. 463; *State v. Greenwood,* 76 Minn. 207, 78 N. W. 1044, 1117. Having examined the foregoing cases, we think there is a distinctive difference between these cases and the case at bar.

"Possession of forged paper by a defendant with a claim of title thereunder, if unexplained, raises a conclusive presumption that he forged it, or procured it to be forged." (19 Cyc. p. 1412.)

"Nevertheless, proof that the defendant uttered a genuine instrument, with forged indorsement in blank by the payee thereof, raises ño such presumption." (19 Cyc. p. 1413.)

In the case of *Miller v. State,* 51 Ind. 405, Worden, J., in part, says:

"We do not think it can be laid down as a rule of law that the uttering and publishing as true of a commercial instrument, with the name of a payee forged thereon, raises a presumption that the person uttering and publishing is guilty of forging the · indorsement."

Section 221, Code Cr. Proc. (Wilson's Rev. & Ann. St. 1903, § 5357), provides the indictment must contain:

"(2) A statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended."

And section 222, Code Cr. Proc. (Wilson's Rev. & Ann. St. 1903, § 5358), provides:

"The indictment must be direct and certain as it regards: * * * (2) The offense charged."

The aforesaid indictment does not conform to the requirements of our Criminal Code. It is charged that the defendant did unlawfully and feloniously sell and deliver to Katz Brothers, for the consideration named, a forged and counterfeited check. It is further charged in the same count that the defendant, before delivering said forged and counterfeited check, wrote and indorsed on the back thereof the name of "Paul Brown." It appears from the copy of the check set forth that the same purports to be signed by H. Biffer, as drawer, and is payable to Paul Brown, and it is alleged that the name of Paul Brown was indorsed on the back of the check in blank. Such check at the time of delivery might have been a forged and counterfeited check by reason of the forging of the name of H. Biffer, as drawer, although the signature of Paul Brown, as indorser, might have been genuine; or such check might have been a forged and counterfeited check at the time of such delivery, by reason of the forgery thereon of the name of Paul Brown as indorser, although the check might have been a genuine check of H. Biffer, drawer. The defendant could not, in advance, know from the allegations of the indictment whether he was to be tried for forging the name of Paul Brown, as indorser, to a genuine check, or of knowingly uttering the check to which the name of H. Biffer had been forged. Under the indictment, proof that he knowingly uttered and forged a counterfeited check to which the name of H. Biffer, as drawer, had been forged, even though the signature of Paul Brown, indorsed thereon had been genuine, would have been sufficient to convict the defendant; or proof that he knowingly ut-

tered the genuine check of H. Biffer with the forged signature of Paul Brown thereon, as indorser, knowing the same to be forged, would have been sufficient to convict the defendant.

On the trial it was controverted that the defendant sold, exchanged, and delivered the alleged forged check. The territory introduced the testimony of H. Biffer, who testified that the signature to the check was not his signature; and also introduced testimony tending to show that the defendant, Moses Wells, at the time he delivered the check, wrote on the back thereof the name of Paul Brown. The defendant testified that the signature of Paul Brown was genuine, and was written thereon by the person from whom he received the check, and whom he had known as Paul Brown, and that he did not write the indorsement thereon, The defendant also introduced evidence tending to show that the signature of H. Biffer to the check was genuine.

Under this indictment the defendant was compelled, by proof, to meet the allegations of two distinct and separate offenses, upon either of which the jury might find him guilty of forgery; and he could not know in advance by any of the allegations of said indictment upon which of the two the territory might rely. The jury may have found, in fact, that the signature of H. Biffer to the alleged forged check was genuine, and convicted the defendant of uttering a check with the forged name of Paul Brown thereon; or the jury may have found from the evidence that the signature of Paul Brown was genuine, as claimed by the defendant, but that the signature of H. Biffer was forged, and that the defendant knowingly delivered the check with said forged signature of H. Biffer to Katz Brothers with the intent of having the same passed as genuine. We believe that the indictment charges more than one offense. The second offense charged, if not forgery, under the proof, might be false pretense, or false personation; and it is not sufficiently direct and certain. We are, therefore, of opinion that the defendant's demurrer to the indictment should have been sustained.

The second assignment of error is that the court erred in refusing to instruct the jury, at the close of the testimony of the

territory, to find a verdict of not guilty. Section 373, Code Cr. Proc. (Wilson's Ann. St. 1903, § 5509), provides:

"If at any time after the evidence on either side is closed the court deem it insufficient to warrant a conviction it may advise the jury to acquit the defendant, but the jury are not bound by the advice, nor can the court for any cause prevent the jury from giving a verdict."

In this case we believe there was evidence sufficient to go to the jury. However, defendant contends that there was a fatal variance. The indictment alleges that the alleged forged check was, by the defendant, sold, exchanged, and delivered to Katz Brothers, a firm composed of Jacob Katz and Isaac Katz, partners, doing business under the firm name of Katz Brothers. The proof was that Katz Brothers was a corporation, organized under the laws of the territory of Oklahoma. At the close of the testimony defendant again moved the court to instruct the jury that in the opinion of the court the evidence was not sufficient to sustain a verdict of guilty, and that there was a fatal variance between the allegations of the indictment and the proof submitted. This motion was, by the court, overruled, and exception taken. Whereupon the defendant requested the giving of three separate instructions, all to the same effect. No. 3 reads as follows:

"Instruction No. 3. The burden is upon the territory in this case to establish by the evidence, beyond a reasonable doubt, that the defendant did sell or exchange to Katz Brothers, a firm composed of Jacob Katz and Isaac Katz, partners, doing business under the firm name of Katz Brothers, the forged and counterfeited check set forth in the indictment, and proof of the selling or exchanging said check to Katz Brothers, corporation, duly incorporated, is not sufficient to sustain the allegation of the indictment. Refused; and excepted to by the defendant. John H. Burford, Judge."

The court instructed the jury that such variance was not material, which instruction reads as follows:

"Instruction No. 4. The indictment charges that the check was delivered to Katz Brothers, a firm composed of Jacob Katz and Isaac Katz, partners doing business under the firm name of Katz Brothers. If the check was, in fact, passed to Katz Brothers,

a corporation, doing business under the corporate name of Katz Brothers, of which corporation Jacob Katz and Isaac Katz were stockholders and officers, such variance is not material."

To which instruction defendant specifically objected and excepted. The intent to cheat and defraud is the essential element of the crime of forgery. Section 523, c. 25, Wilson's Rev. & Ann. St. 1903, provides:

"Sec. 523. Every person who sells, exchanges or delivers for any consideration, any forged or counterfeited promissory note, check, bill, draft, or other evidence of debt, or engagement for the payment of money absolutely, or upon any contingency, knowing the same to be forged or counterfeited, with intent to have the same uttered or passed, or who offers any such note or other instrument for sale, exchange or delivery for any consideration, with the like knowledge and intent, or who receives any such note or other instrument upon a sale, exchange or delivery for any consideration with the like knowledge and intent, is guilty of forgery in the second degree."

The foregoing provision sets forth the offense sought to be charged by the indictment in this case; and by this provision, the gravamen of the offense is the sale, exchange, or delivery of the instrument for a consideration, knowing it to be forged or counterfeited, with the intent to cheat and defraud. The defendant, testifying, admitted the sale, exchange, and delivery of the check to Katz Brothers. The descriptive words in the indictment, as to who composed the firm of Katz Brothers was entirely unnecessary, and should be regarded as surplusage.

Wharton says:

"There can, it is well said, be no use in requiring proof of allegations which are impertinent; the identity of those which are essential to the claim or charge with the proof is all that is material." (Whar. Crim. Ev. [9th Ed.] par. 139.)

"It is a general rule which runs through the whole criminal law that it is sufficient to prove so much of the indictment as shows the defendant has committed the substantive crime therein specified; and, in the case of redundant allegations, it is sufficient to prove part of what is alleged according to its legal effect, provided, that that which is alleged but not proved be neither essential to the charge, nor describe or limit that which is essential." (1

Chitty Crim. Law, 250; State v. Myers, 99 Mo. 107, 12 S. W. 516.)

Technical errors or defects which do not affect the substantial rights of the parties are to be disregarded under our statute. Section 482, c. 68, Code Cr. Proc. (Wilson's Rev. & Ann. St. 1903, § 5618), provides:

"Sec. 482. On an appeal the court must give judgment without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties."

We believe that the defendant was not prejudiced by the alleged variance in any way. We are, therefore, of opinion that the trial court rightfully refused the instructions offered by the defendant, and correctly stated the law applicable to this feature of the case in the instruction given.

In the third assignment of error it is claimed that the court committed error in admitting certain testimony offered by the territory, over the objection of the defendant. We do not deem it necessary to comment upon this assignment, except to say that, over the objection as made, the testimony was competent.

The fourth and last assignment of error is predicated upon instructions given, Nos. 4, 5, and 6. Instruction No. 4 has been heretofore discussed. The objection to instruction No. 6, we believe, was not well taken.

Instruction No. 5 reads as follows:

"If the defendant sold the check to Katz Brothers at the time and place alleged, and said check was not the genuine check of H. Biffer, then a material question to be determined by you is, whether or not he knew it was forged at the time he obtained the goods and money on it from Katz Brothers. If he had no knowledge that it was forged, or had no knowledge of any facts cannot be convicted in this case. In determining the question as relating to its execution which would put a reasonably prudent and cautious person upon inquiry as to its genuineness, then he to whether he had knowledge or notice that the check was a forged instrument at the time it was delivered to Katz Brothers, you will take into consideration the evidence relating to the handwriting on the check, the indorsement of the name of Paul Brown on the back of the check, the evidence as to who wrote said name

on the back of the check and where it was written, and whether the indorsement on the back of the check was written by the same person who wrote the name of Paul Brown in the face of the check, and all facts and circumstances in evidence which would in any manner inform the defendant, or notice, or create in his mind a reasonable suspicion as to its genuineness, and if the defendant himself forged the check, or if he had notice that it was forged, or if he had notice of any suspicious facts or circumstances which were sufficient to put a reasonably prudent and cautious person upon inquiry, which, if followed up, would have led to knowledge of its forgery, then he would be charged with notice of the character of the check."

Section 523, c. 25, Wilson's Rev. & Ann. St. 1903, hereinbefore set forth, expressly provides that a person, to be guilty of forgery in the second degree, must sell, offer for sale, exchange or deliver for a consideration, or receive for a consideration, a forged or counterfeited check, etc., knowing the same to be forged or counterfeited. Under this provision of the law requiring knowledge of. the character of the instrument, we believe that the court committed error in using the qualifying language in the foregoing instruction; and we believe the court erred in so instructing the jury as to what constituted or amounted to knowledge on part of the defendant.

"To constitute uttering and publishing a forged instrument, it is necessary that there should be knowledge on the part of the defendant that the document is false and fraudulent." (A. & E. Enc. of Law [1st Ed.] vol. 8, 491.)

Mr. Wharton says:

"In cases of uttering and publishing a scienter must be averred, though it is sufficient that this averment should be given in general terms." (Whar. Crim. Law, vol. 1, § 742.)

"Uttering is offering a forged instrument knowing it to be such, whether such offer is accepted or not, with a representation by words or action that it is genuine, with an intent to defraud; and it is a public offense. While the making of a forged instrument and the uttering of it by the same person as one transaction constitute but one offense, one may be guilty of uttering an instrument forged by another; but to constitute the offense it is essential that the person uttering the forged instrument have actual

knowledge of its falsity. It is not sufficient that a person utter-ing an instrument has reasonable cause to believe it was forged." (19 Cyc. p. 1388.)

. In the case of *Elsey v. State,* 47 Ark. 572, 2 S. W. 337, Mr. Justice Battle, speaking for the court, in part says:

"Another question in this case, presented by the evidence, and the instruction requested by appellants and refused by the court, is, what is necessary to constitute an uttering? To utter and pub-lish a document is to offer, directly or indirectly, by words or action, such document as good. To constitute the offense of utter-ing and publishing a forged writing, it is necessary that there be an intent to defraud, and that there should be a knowledge of the falsity of the document."

In *Carver v. People,* 39 Mich. 786, that eminent jurist, Justice Cooley, expressing the opinion of the court, says:

"Many of the exceptions relied upon in this case appear to us frivolous, but two which are taken to the charge are fatal to the conviction  The circuit judge instructed the jury that if they found the accused uttered the instrument having reasonable cause to believe it was forged, they should find them guilty. This was a serious error. The statute punishes those only who utter and publish forged instruments knowing them to be forged, but this in-struction required a conviction if the jury believed the accused were merely negligent in uttering an instrument in respect to which the facts should have put them upon their guard. No doubt, if the jury are satisfied the accused had reason to believe the in-strument was forged, they might find the guilty knowledge. But knowledge of a thing and reason to believe in its existence are not identical, and the finding of the one is not equivalent to the finding of the other. The one falls short of the other exactly as gross carelessness falls short of criminal intent. It is a state of things from which knowledge might be inferred, and under the circumstances of this case probably ought to have been inferred; but the inference was one the jury might or might not draw, ac-cording as they were or were not satisfied of the privity of the ac-cused with the fraudulent practices of Dingman. They were not required to deduce the conclusion if they had reasonable doubts of the guilty knowledge."

The forgoing authorities properly state the law as we find it. The instruction was clearly erroneous, and misleading to the

jury. The defendant's objection to this instruction was well taken.

For the reasons stated, the judgment of the district court of Payne county, Okla. T., is reversed, and the cause remanded to the district court of Payne county, Okla..

FURMAN, Presiding Judge, and BAKER, Judge, concur.